IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION

| | |
|---|---|
| PDG, LLC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21-cv-5916 |
| v. | ) |
| | ) |
| THE PARTNERSHIPS AND | ) |
| UNINCORPORATED ASSOCIATIONS | ) **DEMAND FOR JURY TRIAL** |
| IDENTIFIED IN SCHEDULE "A", | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

PDG, LLC. ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint for trademark infringement under the Lanham Act, offering for sale and selling counterfeit goods in violation of Plaintiff's exclusive rights, copyright infringement, violations of the Illinois Deceptive Trade Practices Act and civil conspiracy against the partnerships and unincorporated associations identified in Schedule "A" (together, "Defendants"). In support hereof, Plaintiff states as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, because each Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of the fully interactive, commercial Internet stores operating under the Defendant domain names and/or the Defendant Internet Stores identified in Schedule A. Specifically, each of the Defendants directly reaches out to do business with Illinois residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products using counterfeit versions of Plaintiff's federally registered trademark directly to Illinois consumers. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II. INTRODUCTION

3. Plaintiff filed this action to combat online counterfeiters and infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's federally registered trademark REDACTED (U.S. Reg. No. REDACTED) and copyrighted photographs and videos (U.S. Reg. Nos. REDACTED), attached as **Group Exhibit 1.** The Defendants create Internet stores ("the Defendant Internet Stores" or "the Stores") by the dozens and design them so that the Stores to appear to be selling genuine copies of Plaintiff's REDACTED branded REDACTED when in actuality the Stores are selling counterfeit versions to unknowing consumers.

4. The Defendant Internet Stores share unique identifiers, such as similar design elements of the counterfeit product offered for sale and, on information and belief, these

similarities suggest that the Defendant Internet Stores share common manufacturing sources, thus establishing that Defendants' counterfeiting and infringement operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their Stores multiple times, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' counterfeiting and willful infringement of Plaintiff's registered trademark, as well as to protect unknowing consumers from purchasing counterfeit products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark as a result of Defendants' actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff REDACTED.**

5. Plaintiff is a REDACTED limited liability company. It created and sells a high quality unique REDACTED containing well constructed REDACTED all sold, offered for sale, and marketed under the REDACTED trademark. REDACTED.

6. Plaintiff introduced its REDACTED branded REDACTED in REDACTED. Plaintiff's founder set out to create REDACTED.[1] Plaintiff continues to heavily advertise its unique REDACTED through advertisements demonstrating both its technology and trademarked name through several social media distribution channels. Marketing and advertising of the REDACTED features original content and reviews of the REDACTED and REDACTED pieces

---

[1] REDACTED

all branded with the REDACTED trademark. REDACTED branded REDACTED and pieces have has been highly regarded by several media outlets such as REDACTED.

7. Plaintiff distributes and retails its high-quality REDACTED within the Northern District of Illinois under the Federally registered trademark REDACTED. Defendants' sales of the counterfeit product in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

8. Plaintiff's brand is symbolized by the REDACTED trademark and is a recognized brand of high-quality REDACTEDs having suction cup darts as pieces of the REDACTED. The REDACTED trademark is distinctive and identifies the merchandise as goods originating from Plaintiff. The registration for the REDACTED trademark constitutes prima facie evidence of its validity and of Plaintiff's exclusive right to use the REDACTED trademark pursuant to 15 U.S.C. § 1057(b). The REDACTED trademark has been continuously used and never abandoned since its first sale in REDACTED and since its registration in REDACTED.

9. Plaintiff uses the REDACTED trademark to identify its goods. The REDACTED trademark is distinct when it is applied to Plaintiff's product, signaling to the purchaser and consumer that the REDACTED are from Plaintiff and are made and manufactured to Plaintiff's original specifications and standards. Further, the use of the word elements "REDACTED" and "REDACTED" together in advertising of the REDACTED originated with Plaintiff.

10. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the REDACTED trademark. As a result, customers and consumers recognize that REDACTEDs, REDACTED pieces and products bearing the distinctive REDACTED trademark originate exclusively with Plaintiff.

11. Since its initial launch of the original REDACTED branded REDACTED, as of its first use in commerce in REDACTED, Plaintiff's trademark has been the subject of substantial and continuous marketing and promotion by the Plaintiff throughout the United States and, due to its strong internet presence, throughout the entire world. Genuine REDACTED branded REDACTED, and products are offered and sold by Plaintiff directly over the Internet, through their website REDACTED.com/ and through a verified Amazon Online Store at REDACTED. Plaintiff has no other distributors or retailers authorized to sell REDACTED branded REDACTED, and products.

**THE DEFENDANTS**

12. Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the state of Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online commercial marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products to consumers within the United States, including Illinois and in this Judicial District.

13. Defendants are an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine REDACTED products, while they actual sell inferior imitations of Plaintiff's REDACTED and REDACTED pieces. The Defendant Internet Stores share unique identifiers, such as common design elements, the same or similar counterfeit product that they offer for sale, similar counterfeit product descriptions, the same or substantially similar shopping cart platforms, accepted payment

methods, check-out methods, lack of contact information, identically or similarly priced counterfeit product and volume sale discounts, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction or occurrence. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## THE DEFENDANTS' UNLAWFUL CONDUCT

14. The success of Plaintiff's brand has resulted in significant counterfeiting and infringement. Consequently, Plaintiff has identified numerous marketplace listings on e-commerce platforms such as, but not limited to, Alibaba, Aliexpress, Amazon, eBay, Shopify, Dhgate and Wish including the Defendant Aliases, which have been offering for sale, selling, and exporting illegal products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Aliases. E-commerce sales, including e-commerce Internet Stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* **Exhibit 2**, Department of Homeland Security, *Fiscal Year 2019 Seizure Statistics Report*. According to Customs and Border Patrol's ("CBP") report, over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Approximately 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

15. Counterfeiting rings are able to take advantage of the anonymity provided by the Internet which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 3**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 41 NW. J. INT'L. L. & BUS. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Illinois residents by setting up and operating e-Commerce Internet Stores that target United States consumers using one or more aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Illinois.

16. Defendants often go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

17. Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the REDACTED trademark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith. Defendants' Internet Stores also use the same pictures to advertise their counterfeit product that Plaintiff uses on its webpage to sell and advertise its genuine and original REDACTED branded REDACTED, sowing further confusion among potential purchasers.

18. The counterfeit products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

19. Upon information and belief, Defendants also deceive unknowing customers by using the REDACTED trademark without authorization within the content, text, and/or meta tags of their websites to attract various search engines on the Internet looking for websites relevant to consumer searches for Plaintiff's REDACTED branded REDACTED. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results after others are shut down. As such, Plaintiff also seeks to disable Defendant domain names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit products.

20. Defendants' use of the trademark on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the counterfeit products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming

Plaintiff. Defendants have manufactured, imported, distributed, offered for sale, and sold counterfeit products using the REDACTED trademark and continue to do so.

21. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the REDACTED trademark in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, inter alia, the Internet, using Plaintiff's copyrighted photographs and audiovisual works in their marketing. The counterfeit products are not genuine products of the Plaintiff. The Plaintiff did not manufacture, inspect, or package the counterfeit products and did not approve the counterfeit products for sale or distribution. Each of the Defendants' Internet Stores offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

22. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling counterfeit products that infringe upon the REDACTED trademark unless preliminarily and permanently enjoined.

23. Defendants' use of the REDACTED trademark in connection with the advertising, distribution, offer for sale, and sale of counterfeit products, including the sale of counterfeit products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**

**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

24. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 23.

25. This is a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered REDACTED Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The REDACTED Trademark is a distinctive mark. Consumers have come to expect the highest quality from Plaintiff's products provided under Plaintiff's Trademark.

26. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with Plaintiff's Trademark without Plaintiff's permission.

27. Plaintiff is the exclusive owner of Plaintiff's Trademark. Plaintiff's United States Registration for Plaintiff's Trademark (**Exhibit 1**) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Trademark and are willfully infringing and intentionally using counterfeits of Plaintiff's Trademark. Defendants' willful, intentional, and unauthorized use of Plaintiff's Trademark is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

28. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

29. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Plaintiff's Trademark.

30. The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit Plaintiff's REDACTED product.

## COUNT II

## FALSE DESIGNATION OF ORIGIN

31. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

32. Defendants' promotion, marketing, offering for sale, and sale of infringing and counterfeit branded product has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit version of Plaintiff's REDACTED branded REDACTED.

33. By using Plaintiff's Trademark, photographs, and audiovisual works in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit products. By their use of Plaintiff's original photographs in association with the offer and sale of the counterfeit product, Defendants seek to further confuse the relevant public as to the source or sponsorship of their goods by Plaintiff.

34. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

35. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III

## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

## (815 ILCS § 510, *et seq.*)

36. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35.

37. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit product as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiff's genuine REDACTED branded REDACTED, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

38. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

39. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by this Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
## COPYRIGHT INFRINGEMENT 17 U.S.C. § 501(a)

40. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 39.

41. Plaintiff's Works have significant value and have been produced and created at considerable expense. Plaintiff is the owner of each original work, and all Works at issue have been registered with the U.S. Copyright Office. (See **Exhibit 1**)

42. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted Plaintiff's Works, including derivative works.

43. Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's Works, Defendants wrongfully created copies of the copyrighted Plaintiff's Works without Plaintiff's consent and engaged in acts of widespread infringement through publishing and distributing the Plaintiff's Works via online websites and digital markets in connection with the marketing of their counterfeit products. Indeed, every photograph, video and video still image used by Defendants is virtually identical to the original Plaintiff's Works

44. Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's copyrights by making or causing to be made derivative works from Plaintiff's Works by producing and distributing reproductions without Plaintiff's permission.

45. Defendants, without the permission or consent of Plaintiff, have published online infringing derivative works of Plaintiff's Works. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101, et seq.).

46. Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted Plaintiff's Works. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of Plaintiff's Works.

47. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts, and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

48. As a result of Defendants' infringement of Plaintiff's exclusive rights under its copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504.

49. The conduct of Defendants is causing, and unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright and ordering that Defendants destroy all unauthorized copies. Defendants' copies, digital files, and other embodiments of Plaintiff's Works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. § 503.

## COUNT V

## CIVIL CONSPIRACY

50. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 39.

51. Plaintiff is informed and believe and thereon alleges that Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct including, without limitation, a concerted and collaborated effort to maintain the distribution, marketing, advertising, shipping, offer for sale, or sale of counterfeit products in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

52. The intent, purpose, and objective of the conspiracy and the underlying combination of unlawful acts and misconduct committed by the Defendants was to undermine Plaintiff and its business by unfairly competing against it as described above.

53. The Defendants each understood and accepted the foregoing scheme and agreed to do their respective part to further accomplish the foregoing intent, purpose, and objective. Thus, by entering into the conspiracy, each Defendant has deliberately, willfully, and maliciously permitted, encouraged, and/or induced all of the foregoing unlawful acts and misconduct.

54. As a direct and proximate cause of the unlawful acts and misconduct undertaken by each Defendant in furtherance of the conspiracy, Plaintiff has sustained, and unless each Defendant is restrained and enjoined, will continue to sustain severe, immediate, and irreparable harm, damage, and injury for which Plaintiff has no adequate remedy at law

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

   a. Using Plaintiff's Trademark in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademark;

   b. Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff

for sale under Plaintiff's Trademark and associated with or derived from Plaintiff's Trademark;

c. Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs in connection with the offer or sale of counterfeit products;

d. Further infringing Plaintiff's Trademark and damaging Plaintiff's goodwill;

e. Otherwise competing unfairly with Plaintiff in any manner;

f. Publishing and distributing Plaintiff's Works and creating derivative works therefrom;

g. Shipping (including drop-shipping), delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's Trademark, or any reproductions, counterfeit copies, or colorable imitations thereof;

h. Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit product;

i. Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's mark or

reproduction, counterfeit copy or colorable imitation therefor that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's mark; and,

j. Registering any additional domain names that use or incorporate any portion of the Plaintiff's mark; and,

2. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. Displaying images protected by the Plaintiff's copyrights and trademark in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Plaintiff's trademark; and

b. Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's trademark or any reproductions, counterfeit copies, or colorable imitation thereof; and,

3. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraphs 1(a) through 1(g) above any and all injunctive relief ordered by this Court;

4. Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: Alibaba, Aliexpress, Amazon, eBay, Shopify, Dhgate and Wish; social media platforms such as: Facebook,

YouTube, LinkedIn, Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the Plaintiff's mark; shall:

    a. Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit Plaintiff's REDACTED product using Plaintiff's Trademark, including any accounts associated with the Defendants listed on Schedule A;

    b. Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeiting and infringing counterfeit product using Plaintiff's Trademark; and,

    c. Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

5. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6. For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's rights in its federally registered trademark pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

7. For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

8. In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's Trademark;

9. That Plaintiff be awarded damages for copyright infringement consisting of each Defendant's actual damages and profits pursuant to 17 U.S.C. §504(b), or in the alternative, statutory damages of $30,000 per work infringed pursuant to 17 U.S.C. §504(c)(1), whichever is greater, or if any Defendant's conduct is found to be willful, up to $150,000 per work infringed pursuant to 17 U.S.C §504(c)(2).

10. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

11. That Plaintiff be awarded any and all other relief that this Court deems equitable and just.

Plaintiff demands trial by jury as to all causes of action so triable.

Dated: November 4, 2021

Respectfully submitted,

/s/ James E. Judge

Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Flener IP Law, LLC
77 W. Washington St., Suite 800
Chicago IL 60602
(312) 724-8874
litigation@fleneriplaw.com